IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Case No. 4-24-CV-107

|  |  |
|---|---|
| VIVIAN POMPLIANO and AJP GROUP, LLC d/b/a POMP BOYS MOTORS, <br><br> *Plaintiffs*, <br><br> v. <br><br> THE CITY OF ROANOKE RAPIDS; JAMIE LEE HARDY, in his individual and official capacities; ANTONIO SEWARD, in his individual and official capacities; JAYME SHELBURNE, in his individual and official capacities; VICKIE EVANS, in her individual capacity; DENNIS HARVEY, in his individual capacity, ROSE BEACHMAN, in her individual capacity, and L&R MOTOR COMPANY, <br><br> *Defendants*. | **COMPLAINT** <br><br> JURY TRIAL DEMANDED |

## I.    NATURE OF THE CASE

1.    This case involves extreme misconduct by officers of the Roanoke Rapids Police Department. In an effort to protect the financial interests of local mechanics and car shop owners, and in retaliation for Plaintiffs' constitutionally protected speech and actions, the officers—through a repeated pattern of harassment, threats, and, eventually, false criminal charges—forced the closure of Plaintiffs' classic car business known as Pomp Boys.

2.    Pomp Boys is owned by Plaintiff Vivian Pompliano.

3.     Shortly after Pomp Boys opened, the Defendant Officers told Ms. Pompliano that her business was a threat to other local businesses and that if she did not voluntarily leave town, the officers would shut her down.

4.     When Ms. Pompliano stood her ground, the Roanoke Rapids Police Department initiated a campaign to make good on their threat. Among other tactics, the Defendant Officers:

    a.     Repeatedly showed up unannounced at Pomp Boys and blocked the entrance to the business with their squad cars;

    b.     Encouraged and recruited customers to make false civil allegations and complaints against Pomp Boys;

    c.     Distributed a flyer about a civil lawyer who would bring a "free" lawsuit against Pomp Boys;

    d.     Assisted and encouraged customers to trespass and damage Pomp Boys' property;

    e.     And, ultimately, recruited individuals to bring false criminal charges against Ms. Pompliano.

5.     After initiating the wrongful criminal charges, the officers continued to spread false information about Pomp Boys in the media to deter future business and force Pomp Boys to close.

6.     Eventually, the officers were successful. Amidst the false charges and false allegations, Pomp Boys was forced to shutter its Roanoke Rapids location and suffered extensive financial loss as a result.

2

7.     Plaintiffs bring this action seeking to remedy their financial loss, loss of liberty and good name from the false charges and false allegations, and the extreme emotional injuries caused by the Defendants' actions.

## II.     JURISDICTION

8.     This Court has original subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) and 42 U.S.C. § 1988 because the claims asserted by Plaintiff arise under the laws of the United States and seek redress for rights guaranteed by the United States Constitution and deprived under color of state law.

9.     Plaintiff further invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any and all North Carolina state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## III.     VENUE

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because (i) the events giving rise to the claim occurred in this District, and (ii) on information and belief, multiple Defendants reside within this District.

## IV.     PARTIES

11.     Plaintiff Vivian Pompliano is a citizen and resident of Wake County, North Carolina.

3

12.     Plaintiff AJP Group, LLC d/b/a Pomp Boys Motors ("Pomp Boys") is a limited liability company formed and existing under the laws of the State of North Carolina. Ms. Pompliano is the sole owner and member of Pomp Boys.

13.     Defendant City of Roanoke Rapids ("City" or "Roanoke Rapids") is an incorporated municipality organized under the laws of the State of North Carolina. It maintains and operates the Roanoke Rapids Police Department ("RRPD"). Employees of RRPD are employees and agents of the City, which bears legal responsibility under state law for the acts and omissions of RRPD's employees undertaken in the course of their employment. The City is responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

14.     On information and belief, the City of Roanoke Rapids waived governmental and sovereign immunity from the state law tort claims alleged herein pursuant to N.C.G.S. § 160A-485, either by participation in a government risk pool or through purchase of commercial insurance that will indemnify the City and its agents for any judgment against it or its agents named in this action. This waiver under N.C.G.S. § 160A-485 was in effect at all times relevant to the allegations made herein.

15.     All individual Defendant RRPD officers sued herein are entitled under North Carolina law to indemnification by the City of Roanoke Rapids for any liability arising from the conduct described herein.

4

16.     Officer Jamie Lee Hardy is a police officer formerly employed by the RRPD and is sued in his individual and official capacities. As explained below, Officer Hardy acted maliciously and corruptly.

17.     Officer Antonio Seward is a police officer employed by the RRPD and is sued in his individual and official capacities. As explained below, Officer Seward acted maliciously and corruptly.

18.     Officer Jayme Shelburne is a police officer employed by the RRPD and is sued in his individual and official capacities. As explained below, Officer Shelburne acted maliciously and corruptly.

19.     Vickie Evans is a resident of Henrico County, Virginia, and is sued in her individual capacity.

20.     Dennis Harvey is a resident of Halifax County, North Carolina, and is sued in his individual capacity.

21.     Rose Beachem is a resident of Halifax County, North Carolina, and is sued in her individual capacity.

22.     L&R Motor Company is a corporation formed and existing under the laws of the State of North Carolina. Ms. Beachem is a partial owner and treasurer of L&R Motor Company.

## V.     FACTUAL BACKGROUND

### A.     The North Carolina Mechanic's Lien Statute.

23.     The North Carolina Constitution guarantees mechanics the right to impose "an adequate lien on the subject-matter of their labor." N.C. Const. Art. X § 3.

24.     Giving effect to that guarantee, Chapter 44A of the North Carolina General Statutes ("the lien statute") permits those providing labor, services, materials, or equipment used to improve vehicles to hold and place liens on those vehicles as security for their work—what are colloquially referred to as "mechanic's liens." *See Gaines & Co. v. Wendell Falls Residential, LLC*, 212 N.C. App. 606, 610, 714 S.E.2d 179, 182 (2011) (discussing this "remedial" statute).

25.     North Carolina car shop owners routinely use mechanic's liens to recover unpaid bills.

26.     The lien statute provides automatic lien rights to mechanics and car shop owners:

> Any person who repairs, services, tows, or stores motor vehicles in the ordinary course of the person's business pursuant to an express or implied contract with an owner or legal possessor of the motor vehicle . . . has a lien upon the motor vehicle for reasonable charges for such repairs, servicing, towing [and] storing[.]

N.C. Gen. Stat. § 44A-2(d).

27.     In certain instances, the statute permits a mechanic to sell a vehicle to recover outstanding fees for work completed (including storage or towing fees). *See* N.C. Gen. Stat. § 44A-4 ("If the charges for which the lien is claimed under this Article remain unpaid or unsatisfied for 30 days or, in the case of towing and

6

storage charges on a motor vehicle, 10 days following the maturity of the obligation to pay any such charges, the lienor may enforce the lien by public or private sale as provided in this section.").

28. Before conducting such a sale, a lienor must give notice to the Division of Motor Vehicles (DMV) that a lien is being asserted, and that a sale is being proposed. *See* N.C. Gen. Stat. § 44A-4(b)(1).

29. The DMV must then notify the person having legal title to the vehicle to explain the nature of the lien and that the lienor intends to sell the vehicle to satisfy the lien. *Id.*

30. The DMV's notice also must inform the vehicle owner of the right to a judicial hearing and determination as to the validity of the lien prior to any sale. *Id.*

31. If the DMV or lienor is notified that a hearing is desired prior to sale, the lien may be enforced by bringing a civil action on the debt in superior court. *Id.*

32. If a court determines the lien is valid, the vehicle may then be sold to satisfy the lien. *Id.*

33. If a lien is disputed, the DMV will transfer title and permit a sale only pursuant to the order of a court of competent jurisdiction. *Id.*

34. This process is routinely employed by mechanics and car shop owners in North Carolina to provide security for payment and to deal with vehicles that have been abandoned or left for significant periods of time at their business.

35. Disputes over enforcement of the mechanic's lien process are common and are typically resolved during the DMV notice and hearing process or in civil

7

court. Moreover, Chapter 44A discusses at length the ways in which a vehicle owner may remove or contest a mechanic's lien in civil court. *See* N.C. Gen. Stat. § 44A-16.

36. Plaintiffs are aware of no other instances where criminal charges have been brought related to a dispute over enforcement of North Carolina's mechanic's lien.

**B. Pomp Boys Motors Opens in Roanoke Rapids.**

37. At all times relevant to the allegations contained herein, Plaintiff Vivian Pompliano operated and managed Plaintiff AJP Group, LLC d/b/a Pomp Boys Motors ("Pomp Boys").

38. Pomp Boys is a female-owned business formed in 2019 that was to be a legacy business for Ms. Pompliano's family who are generational car enthusiasts. Pomp Boys opened its first location in Roanoke Rapids, North Carolina.

39. Pomp Boys specialized in providing custom modifications and restoration for classic vehicles.

40. Pomp Boys spent hundreds of thousands of dollars on renovations to its Roanoke Rapids location and advertising. The company also utilized innovative marketing strategies such as hosting a regular "cars and coffee" event where customers and enthusiasts could mingle; regular luncheons where customers could freely discuss their interests and questions with Pomp Boys' expert staff; and a nationwide advertising campaign.

41. Pomp Boys earliest days saw great success. The company attracted business from car enthusiasts around the country who would ship their classic cars

8

to Pomp Boys for specialized services. Pomp Boys also provided specialized as well as general services to a growing local customer base.

## C. RRPD Officers Systematically Harass Plaintiffs.

42. Pomp Boys' success and aggressive marketing campaign posed a threat to area mechanics and car shops. As an example, a neighboring shop called "All in One Automotive"—which specialized in audio services—had been using the Pomp Boys parking lot without any restrictions for years. When Pomp Boys opened, however, Ms. Pompliano requested that All in One Automative either stop using the parking lot, which Pomp Boys needed for its own commercial purposes, or begin paying rent in exchange for its use. Just as threatening to "All in One Automotive" was that Pomp Boys also started to provide high-end audio service repair and installation.

43. More generally, as Pomp Boys' customer base began to grow, the customer base of area competitors began to shrink. Rather than innovate themselves, these area competitors began complaining openly, in particular to the police.

44. These complaints—involving lawful competition and having nothing to do with criminal conduct—were made to Defendant RRPD Officers. And these officers took it upon themselves to address these complaints because, upon information and belief, Officer Hardy had close personal relationships with some of the threatened business owners.

9

45.     As a result, RRPD officers Hardy, Seward and Shelburne began regularly visiting Pomp Boys and harassing and threatening Ms. Pompliano and her staff at the Roanoke Rapids location. The officers would do so while in uniform and acting as official officers of the RRPD. During one of the earliest visits, Officer Hardy specifically mentioned his concern for "All in One Automotive," stating that Ms. Pompliano should "make other plans and move her business elsewhere."

46.     While on duty and acting in his official capacity as an RRPD police officer, Officer Hardy often became furious when Ms. Pompliano refused to cede to his instructions, telling her he would "get her".

47.     During one of RRPD Officer Seward's visits to Pomp Boys, Ms. Pompliano asked him to lower his voice so customers would not hear him, at which point he screamed louder, "It's our shop when we're in here!"

48.     When Ms. Pompliano continued to stand her ground and complained about the police behavior to city officials including the Chief of Police, in response, Officers Hardy, Seward, Shelburne retaliated by systematically harassing Ms. Pompliano and her staff and escalating their efforts to disrupt Ms. Pompliano's business.

49.     While the Officers' harassment was ongoing, Pomp Boys was working directly with the DMV to enforce liens against customers with outstanding bills for unpaid work and or storage.

50.     The Officers—who also worked closely with the DMV—tried to leverage these civil disputes over fees for unpaid work and storage by encouraging lienees to make criminal allegations against Ms. Pompliano.

51.     Eventually, the Officers went as far as initiating false criminal charges against Ms. Pompliano based on pending civil disputes over unpaid fees and mechanic's liens.

52.     The Officers' unlawful efforts to harass and force the closure of Pomp Boys included, but were not limited to, the following:

    a.    Actively soliciting customers of Pomp Boys to file unfounded criminal and civil complaints.

    b.    Passing out a flier specifically referring former Pomp Boys customers to a "civil lawyer for Pomp Boys Incidents (free)." The flyer also included a link for filing an NCDOJ Civil Complaint and an RRPD contact for criminal complaints. *See* Ex. A, Lawsuit Flyer.

    c.    Encouraging and/or permitting Pomp Boys' customers to trespass upon its property and take back vehicles for which services had not been paid, all despite Pomp Boys' lawful mechanics lien on these same vehicles.

    d.    Failing to respond to Ms. Pompliano's requests that RRPD prevent and arrest those persons who were trespassing upon Pomp Boys' property.

11

e.  Repeating false statements to the local media pertaining to alleged fictitious crimes in order to demean Pomp Boys and Ms. Pompliano.

f.  Providing legal advice and counseling Pomp Boys' customers to sue Pomp Boys.

g.  Staying on Pomp Boys' property and blocking the main entrance to the shop for hours despite being repeatedly asked to leave and refusing.

**D.  RRPD Initiates False Criminal Charges Against Vivian Pompliano.**

53.  In a culmination of their effort to push Pomp Boys out of Roanoke Rapids, Officers Hardy, Seward and Shelburne conspired to bring criminal charges against Ms. Pompliano.

54.  The officers wrongfully charged Ms. Pompliano with numerous counts of exploitation of an elderly adult and a single count of obtaining property by false pretenses.

55.  These charges all stemmed from the civil disputes between Pomp Boys and a few customers related to unpaid bills from work completed or storage fees owed.

56.  In each instance, Pomp Boys attempted to contact the customers involved and come to a mutual resolution over the unpaid fees.

57.  However, if customers abandoned or left their vehicles at Pomp Boys after receiving notice that work was completed—or refused to pay for work done—

12

Pomp Boys had no option for legal recourse but to use the mechanic's lien statute to remove the vehicle from their property and recover fees for unpaid work or storage.

58.     On each occasion, Pomp Boys worked under the guidance and at the instruction of the DMV and complied with the requirements of the mechanic lien statute.

59.     Officers Hardy, Seward and Shelburne learned of these civil disputes and recruited or encouraged Pomp Boys customers to seek criminal charges against Plaintiffs.

60.     Officers Hardy, Seward and Shelburne were aware of the statutory mandates of the mechanic's lien statute, that Pomp Boys was required to follow the statutory terms to enforce a lien or remove an abandoned vehicle from its property, and that Pomp Boys worked directly with the DMV and received instructions from the DMV on when to initiate the lien and sale process.

61.     Officers Hardy, Seward and Shelburne were aware that Pomp Boys also had contractual agreements with each customer obligating the customer to pay the estimated costs for service as well as $35 per day in storage fees—which would begin to accumulate only upon notice that the service was complete, and the car was ready for pickup.

62.     Officers Hardy, Seward and Shelburne were aware that each of the alleged victims were represented in the civil dispute by legal counsel who had negotiated or was attempting to negotiate a resolution of the lien or fees charged.

13

63. Still, in May and June of 2022, Officers Hardy, Seward and Shelburne conspired to initiate charges against Ms. Pompliano for exploitation of the elderly by deception and intimidation and obtaining property by false pretenses.

64. The alleged victims of these false charges were Vickie Evans, Rose Beachem, and Dennis Harvey.

    a.    Ms. Evans' husband, Monty Evans, brought his vehicle for service at Pomp Boys. After the work was completed, Mr. Evans offered to sell his vehicle to Pomp Boys but asked to leave the car at the shop until he could return with the title. Mr. Evans was informed that storing his vehicle would cost $35 a day. This information is also posted at Pomp Boys' facility and on Mr. Evans' invoice. Mr. Evans knew of, and agreed to, these costs. For the next several months, Mr. Evans was in and out of the hospital, but requested that Pomp Boys keep storing his vehicle, that he was not abandoning it, and he would return with the title. In January 2022, Ms. Evans called Ms. Pompliano to tell her that Mr. Evans had passed away. She told Ms. Pompliano that she was going to come to pick up her husband's vehicle. However, she refused to pay the outstanding bill for storage fees. Moreover, Ms. Evans was not the lawful owner of and did not have title of the vehicle. Under instruction from the DMV, Pomp Boys initiated the lien and sale process—the only available legal

14

recourse to remove the vehicle and collect the fees owed. Ms. Evans was represented by legal counsel in this dispute.

b.    Mr. Harvey took his vehicle to Pomp Boys and agreed to pay an estimated amount to service his vehicle and for any accumulated storage fees. Mr. Harvey was notified the work on his vehicle was complete but he was unable to pay the cost for service. Mr. Harvey began to accrue storage fees. Mr. Harvey contacted the DMV who attempted to negotiate a resolution. Pomp Boys agreed to waive all storage fees if Mr. Harvey would pay the cost for service. Mr. Harvey refused. Pomp Boys, at the advice and instruction from the DMV, initiated the lien and sale process— again, its only recourse. Mr. Harvey was represented by counsel for the lien dispute.

c.    Ms. Beachem brought her car for service at Pomp Boys. Pomp Boys completed the work on her vehicle, but Ms. Beachem, with the assistance of legal counsel, contested the amount of the bill. Staff of Defendant L&R Motor Company inspected the vehicle and contested the work done. Pomp Boys agreed to a reduced fee for work completed, and at the advice of her counsel, Ms. Beachem signed and paid Pomp Boys' invoice, and received her vehicle.

15

65.     Officers Hardy, Seward and Shelburne were aware of all of the above facts.

66.     Officers Hardy, Seward and Shelburne knew in each instance that the allegations made by Pomp Boys customers were either fabricated or did not meet the elements of the charges brought for criminal prosecution.

67.     Officers Hardy, Seward and Shelburne were aware that Pomp Boys had initiated the constitutionally and statutorily mandated mechanic's lien process to recover unpaid fees for work or storage against the alleged victims.

68.     Likewise, Officers Hardy, Seward and Shelburne were aware that Pomp Boys had not used deception, intimidation or made any false representations to deceive its customers—and that each of these alleged victims were represented by legal counsel in the civil disputes over the mechanic's liens.

69.     But still, the officers chose to bring these baseless charges against Ms. Pompliano.

**E.      Vivian Pompliano Is Wrongfully Arrested and Falsely Charged, and Pomp Boys Is Forced to Close.**

70.     On May 26, 2022, Officer Hardy sought and received a warrant for the arrest of Ms. Pompliano based on the allegations related to the mechanic's lien dispute with Vickie Evans. That same day Ms. Pompliano was arrested by Officer Hardy.

71.     Hours after her arrest, RRspin, a website covering news in Roanoke Rapids, published details of Ms. Pompliano's arrest and the charges against her.

72.     Approximately ten days later, Ms. Pompliano was again charged and arrested based on the allegations related to the mechanic's lien disputes with Rose Beachem and Dennis Harvey.

73.     These charges led to additional newspaper and television coverage circulating the false charges and accusations against Ms. Pompliano.

74.     Customers almost immediately stopped coming for service at Pomp Boys.

75.     The criminal charges led to a drastic drop in business and revenue.

76.     Ms. Pompliano and her husband, Anthony Pompliano, both suffered extreme stress and anxiety from these incidents.

77.     By the end of 2022, Pomp Boys was forced to effectively close its flagship Roanoke Rapids location and cease all plans for national expansion.

**F.     A Special Prosecutor Reviews and Dismisses all Charges.**

78.     In 2023, a special prosecutor was appointed to review and prosecute the charges against Ms. Pompliano.

79.     On March 8, 2024, after  reviewing the evidence collected by the RRPD, and learning the full nature of the allegations and their relation to the civil mechanic's lien disputes, the prosecutor dismissed all criminal charges against Ms. Pompliano.

80.     In each dismissal memorandum, the prosecutor wrote the "totality of the evidence in this case is legally insufficient to proceed with criminal charges."

# VI. CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**Prosecution without Probable Cause and Fabrication of False Evidence**
**in Violation of the Fourth Amendment under 42 U.S.C § 1983**
**(Federal Malicious Prosecution)**

81.     Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

82.     This claim is brought by Plaintiff Pompliano against Officers Hardy, Seward and Shelburne, who are sued under this claim in their individual capacities.

83.     Officers Hardy, Seward and Shelburne are sued for violating Ms. Pompliano's rights under the Fourth Amendment and are liable for damages under 42 U.S.C § 1983.

84.     Despite knowing that probable cause did not exist to arrest and prosecute Ms. Pompliano, Officers Hardy, Seward and Shelburne intentionally, recklessly and with malice caused Ms. Pompliano to be arrested, held on bail and prosecuted.

85.     At the time they initiated the false charges, Officers Hardy, Seward and Shelburne were aware that the alleged victims, Ms. Evans, Ms. Beachem and Mr. Harvey: (1) each were engaged in civil disputes with Pomp Boys over unpaid fees for work done and or storage fees; (2) that Pomp Boys had a legal right (and automatic lien) to pursue unpaid fees and seek removal of abandoned vehicles through the mechanic's lien statute; (3) that Pomp Boys was working directly with

18

and under the instruction of the DMV; (4) that each of the alleged victims was contractually and statutorily bound to pay the fees associated with work done and for the storage of their respective vehicles; and (5) that each alleged victim was represented by civil counsel who had either negotiated an agreed-upon resolution of the civil dispute or was attempting to do so.

86.     Finally, the officers were aware that Ms. Pompliano had not used intimidation, deception or false pretenses to obtain the property of the alleged victims.

87.     With the above knowledge, the officers wrongfully arrested and charged Ms. Pompliano with crimes related to each incident.

88.     The officers provided false or misleading information and made material omissions in their statements and charging documents given to the district attorney and the court.

89.     Unsurprisingly, the charges were all dismissed.

90.     As a direct and proximate result of these officers' acts, Ms. Pompliano was wrongfully arrested and imprisoned, causing her to suffer the injuries and damages described herein.

## SECOND CLAIM FOR RELIEF
## Retaliatory Arrest in Violation of the First Amendment under 42 U.S.C § 1983 (First Amendment Retaliation)

91.     Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

19

92.     This claim is brought by Plaintiff Pompliano against Officers Hardy, Seward, and Shelburne, who are sued under this claim in their individual capacities.

93.     Officers Hardy, Seward and Shelburne are sued for violating Ms. Pompliano's rights under the First Amendment and are liable for damages under 42 U.S.C § 1983.

94.     Ms. Pompliano repeatedly spoke out against the harassment and illegal actions of the RRPD police department.

95.     Ms. Pompliano communicated directly with Officers Hardy, Seward and Shelburne, informing them that their actions towards her and her business were unwarranted, were causing her to lose customers and were unlawful.

96.     Ms. Pompliano threatened to take legal action against these officers and to address their conduct with their supervisors if the harassment did not cease.

97.     In response, and in direct retaliation for Ms. Pompliano's statements, the officers successfully recruited individuals to bring false criminal and civil claims against her.

98.     The officers knew that they lacked probable cause to charge Ms. Pompliano, yet still sought and received warrants for Ms. Pompliano's arrest.

99.     As a direct and proximate result of these officers' acts, Ms. Pompliano was wrongfully arrested and imprisoned, causing her to suffer the injuries and damages alleged herein.

20

## THIRD CLAIM FOR RELIEF
## Tortious Interference with Contract under North Carolina Common Law

100.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

101.    This claim is brought by Plaintiffs against Officers Hardy, Seward and Shelburne, who are sued under this claim in their individual and official capacities.

102.    This claim is also brought against the City of Roanoke Rapids, which is sued under this claim for the acts of its employees and officers.

103.    The City of Roanoke Rapids, on information and belief, has waived immunity for this claim on behalf of the City and its officers acting in their official capacities.

104.    Officers Hardy, Seward and Shelburne are sued for violating Plaintiffs rights under North Carolina common law for tortious interference with contract.

105.    RRPD officers including Hardy, Seward, Shelburne and other officers, knowingly and repeatedly interfered with Pomp Boys' existing and potential contracts with customers.

106.    These officers knew that Pomp Boys had valid contracts with its customers including express terms governing customers' obligations to pay service and storage costs.

21

107. The RRPD Defendants intentionally interfered with Pomp Boys' business and induced Pomp Boys' customers not to perform their contracts. Specifically, the RRPD Defendants:

a. repeatedly showed up in force at Pomp Boys without invitation and for the purpose of harassing Pomp Boys employees and customers;

b. repeatedly blocked the entrance to the business with their squad cars;

c. contacted Pomp Boys' customers while falsely claiming that Pomp Boys was taking advantage of its customers and encouraging those customers to break their contractual obligations with Pomp Boys;

d. encouraged Pomp Boys' customers to file civil and criminal claims against Pomp Boys in lieu of fulfilling their contractual obligations with Pomp Boys; and

e. passed out a flyer that directed Pomp Boys customers to contact a civil lawyer.

108. These actions were unjustified and committed with malice. As explained above, Plaintiffs were acting at all times pursuant to the lien statute, their contracts with customers and North Carolina law. Nevertheless, the RRPD Defendants, looking to protect other local businesses and in retaliation for Ms. Pompliano's constitutionally protected speech and actions, repeatedly interfered.

109. This interference induced Pomp Boys' customers to violate their contractual obligations with Pomp Boys. In one instance, for example, RRPD officers assisted a customer in trespassing onto Pomp Boys' property to retrieve the customer's vehicle in contravention of the customer's contract and in contravention of a court order entered under the lien statute. When a Pomp Boys employee refused to deliver the vehicle to the customer, the officers arrested the employee and demanded the return of the customer's vehicle, thereby assisting the customer in breaching contractual and other legal obligations.

110. These officers' actions directly caused numerous individuals who had existing contracts with Pomp Boys and who were in the process of hiring or entering contracts with Pomp Boys to refuse to work with Pomp Boys. This resulted in Plaintiffs' suffering pecuniary loss.

### FOURTH CLAIM FOR RELIEF
### Violation of Art. I §§ 1 and 19 of the North Carolina Constitution
### ("Fruits of Their Own Labor")

111. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

112. This claim is brought by Plaintiffs against Officers Hardy, Seward and Shelburne, who are sued under this claim in their official and individual capacities.

113. This claim is also brought against the City of Roanoke Rapids, which is sued under this claim for the acts of its employees and officers.

23

114.    The City of Roanoke Rapids, on information and belief, has waived immunity for this claim on behalf of the City and its officers acting in their official capacities.

115.    Section 1 of the North Carolina Constitution declares that North Carolinians are entitled to "the enjoyment of the fruits of their own labor." And Section 19 provides that no North Carolinian will be "deprived of his life, liberty, or property, but by the law of the land."

116.    Our state courts have construed these provisions to guarantee a fundamental "right to earn a living," of which state actors "run afoul . . . when they arbitrarily interfere with . . . the operation of business." *Kinsley v. Ace Speedway Racing, Ltd.*, 284 N.C. App. 665, 675 (2022) (collecting cases).

117.    RRPD officers, including Defendant Officers Hardy, Seward and Shelburne, expressly, arbitrarily, and without legal justification sought to force Pomp Boys to close its business and run its owner, Ms. Pompliano, out of town.

118.    Through a persistent pattern of harassment and other arbitrary interference, Defendant RRPD officers succeeded in their aim, forcing Pomp Boys to close.

119.    As a direct and proximate result of the officers' conduct, Pomp Boys was forced to shutter, resulting in Plaintiffs' emotional and pecuniary damages.

120.    Plaintiffs do not have an adequate state remedy, and therefore, Plaintiffs enjoy a direct cause of action against these defendants for the violation of Plaintiffs' rights as guaranteed by the North Carolina Constitution.

24

## FIFTH CLAIM FOR RELIEF
### Violation of Art. I § 19 of the North Carolina Constitution
### ("Selective Enforcement")

121.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

122.    This claim is brought by Plaintiffs against Officers Hardy, Seward and Shelburne, who are sued under this claim in their official and individual capacities.

123.    This claim is also brought against the City of Roanoke Rapids, which is sued under this claim for the acts of its employees and officers.

124.    The City of Roanoke Rapids, on information and belief, has waived immunity for this claim on behalf of the City and its officers acting in their official capacities.

125.    Article I, section 19 of the North Carolina Constitution provides that "[n]o person shall be denied the equal protection of the laws[.]"

126.    The Officers violated Ms. Pompliano's equal-protection rights when they (1) singled her out for prosecution based on (2) the desire to prevent her exercise of constitutional rights—specifically, her "right to earn a living" and her right to pursue "an adequate [mechanic's] lien" and in retaliation for her speech. N.C. Const. art. I, §§ 1, 19; art. X, § 3.

127.    The officers knew that other similarly situated businesses regularly pursued their rights under the mechanic's lien statute.

128. On information and belief, no other car shops or mechanics were subjected to criminal charges for utilizing the lien statute.

129. As a direct and proximate result of the officers' conduct, Pomp Boys was forced to shutter, resulting in Plaintiffs' emotional and pecuniary damages.

130. Plaintiffs do not have an adequate state remedy, and therefore, Plaintiffs enjoy a direct cause of action against these defendants for the violation of Plaintiffs' rights as guaranteed by the North Carolina Constitution.

**SIXTH CLAIM FOR RELIEF**
**Common Law Negligence**

131. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

132. This claim is brought by Plaintiff Pompliano against the City of Roanoke Rapids, which is sued under this claim for the acts of its employees and officers.

133. The City of Roanoke Rapids, on information and belief, has waived immunity for this claim on behalf of the City and its officers acting in their official capacities.

134. The City, through its officers, had the following duties:

    a.    to ensure that citizens were not wrongfully arrested and charged without probable cause;

26

b. to ensure that only reliable sources of evidence were used in criminal prosecutions;

c. to not omit material evidence (including exculpatory evidence) from magistrates, district attorneys and the grand jury;

d. to exercise reasonable care when engaging in criminal investigations; and

e. to include accurate information in reports describing evidence in their possession.

135. The City, through its officers, was negligent and breached duties owed to Plaintiffs in the following respects:

a. The officer defendants wrongfully caused Ms. Pompliano to be arrested and charged without probable cause;

b. The officer defendants omitted key information to the magistrate and district attorney during the course of their investigation and when seeking to press charges;

c. In other respects, to be proved through discovery and at trial.

136. Defendant City of Roanoake Rapids, by and through its agents, was negligent and breached each of the duties outlined above, resulting in Ms. Pompliano being deprived of her right to be free from wrongful arrest and prosecution.

137.    The City, as the principal for its agents, including Defendants Hardy, Seward and Shelburne, is responsible under *respondeat superior* for the injuries caused by the acts and omissions alleged herein.

138.    The defendant officers acted within the course and scope of their employment in the acts and omissions alleged herein.

139.    As a direct and proximate result of the negligence of the City, through its officers, Plaintiff was wrongfully arrested, detained and prosecuted and suffered physical, emotional and pecuniary damages.

**SEVENTH CLAIM FOR RELIEF**
**Civil Conspiracy Against RRPD Defendants and Defendants Vickie Evans,**
**Dennis Harvey, Rose Beachem and L&R Motor Company,**
**pursuant to 42 U.S.C. § 1983**

140.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

141.    This claim is brought by Plaintiffs against Officers Hardy, Seward and Shelburne, who are sued under this claim in their individual capacities, and against Vickie Evans, Dennis Harvey, Rose Beachem and L&R Motor Company, who are sued under this claim in their individual capacities (collectively, the "Conspiring Defendants").

142.    The Conspiring Defendants conspired with one another and other RRPD officers to deprive Plaintiffs of their constitutional and other rights.

143. Despite knowing that they lacked probable cause to bring criminal charges against Ms. Pompliano, the Conspiring Defendants conspired to seek and execute (and did seek and execute) warrants for Ms. Pompliano's arrest in violation of the Fourth Amendment.

144. In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were willful participants in joint activity, including the following:

    a. Ms. Evans was aware, as were the RRPD Defendants, that she was not the lawful owner of and did not have title of the vehicle that was in Pomp Boys' possession—and that her husband had accrued unpaid fees—yet she sought to bring criminal charges against Ms. Pompliano in retaliation for Pomp Boys' lawful initiation of the mechanic's lien and sale process;

    b. Mr. Harvey was aware, as were the RRPD Defendants, that he had agreed to pay an estimated amount to service his vehicle and for any accumulated storage fees, yet—after he was unable to pay his bill—he sought to bring criminal charges against Ms. Pompliano in retaliation for Pomp Boys lawful initiation of the mechanic's lien and sale process;

    c. Ms. Beachem and L&R Motor Company were aware that they had agreed to pay an estimated amount to service the vehicle, that L&R staff had examined the vehicle prior to payment, that

29

they had negotiated a lower price with the assistance of legal counsel, yet still sought to bring criminal charges against Ms. Pompliano; and

d.    Officers Hardy, Seward and Shelburne knew that the disputes with Pomp Boys were of a civil nature and that they lacked probable cause to initiate criminal prosecutions, yet they recruited individuals such as Ms. Evans, Mr. Harvey and Ms. Beachem to serve as complainants against Ms. Pompliano.

145.    After the filing of the false criminal charges, the RRPD officers continued to conspire with Pomp Boys customers, including Ms. Evans and Mr. Harvey, and successfully solicited and encouraged them to file a civil lawsuit in the beginning of 2023 against Plaintiffs. This lawsuit resulted in extreme emotional and financial damage to Plaintiffs, including the temporary attachment of their real estate and other property, which was achieved through presentation of the false criminal charges brought against Ms. Pompliano. Many if not all of the civil claims brought against Plaintiffs in the 2023 suit are meritless and are related to Plaintiffs' proper and lawful initiation of the mechanic's lien statute.

146.    The Conspiring Defendants also acquiesced in the conspiracy by having full knowledge of the conspiracy and failing to intervene.

147.    As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages herein alleged and seek compensatory and punitive damages.

## EIGHTH CLAIM FOR RELIEF
### *Respondeat Superior*

148.   Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

149.   This claim is brought by Plaintiffs against Officers Hardy, Seward and Shelburne, who are sued under this claim in their official capacities.

150.   In committing the acts alleged in the previous paragraphs, these officer defendants were employees or agents of the City of Roanoke Rapids, acting within the scope of their employment.

151.   The City of Roanoke Rapids, on information and belief, has waived immunity for this claim on behalf of the City and its officers acting in their official capacities.

152.   Therefore, the City is liable as principal for the torts committed by its agents in the course and scope of their employment under the doctrine of *respondeat superior*.

## NINTH CLAIM FOR RELIEF
### Indemnification

153.   Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

154.   This claim is brought by Plaintiffs against Officers Hardy, Seward and Shelburne, who are sued under this claim in their individual and official capacities.

31

155. The City of Roanoke Rapids is permitted by state law and, on information and belief, has elected to pay any final judgment against an employee that results from an act done or omission made in the scope and course of his or her employment with the City.

156. In committing the acts alleged in this Complaint, the named officer defendants were at all times employees of the City and acting within the course and scope of their employment.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and order relief as follows:

A.  Compensatory damages against all Defendants, jointly and severally;

B.  Punitive damages against the individual Defendants, jointly and severally;

C.  Pre-judgment and post-judgment interest and recovery of costs, as well as reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988 and any other applicable laws;

D.  Any other and further relief the Court deems equitable and just.

## VIII.  JURY DEMAND

Plaintiffs respectfully demand a trial by jury of all issues in this matter so triable pursuant to Federal Rule of Civil Procedure 38(b).

* * * Signatures Appear on Following Page * * *

32

Respectfully submitted this the 26th day of July 2024.

/s/ Abraham Rubert-Schewel
Abraham Rubert-Schewel (NCSB #: 56863)
Email: schewel@tinfulton.com
Gagan Gupta (NCSB #: 53119)
Email: ggupta@tinfulton.com
TIN FULTON WALKER & OWEN PLLC
119 Orange Street, Floor 2
Durham, NC 27701
Telephone: (919) 307-8400

*Counsel for Plaintiffs*