IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:24-CV-00107-BO-KS

| | | |
|---|---|---|
| VIVIAN POMPLIANO and AJP GROUP, LLC d/b/a POMP BOYS MOTORS,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF ROANOKE RAPIDS, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <u>ORDER</u> |

This cause comes before the Court on defendants' motions for summary judgment. [DE 62]; [DE 66]. Plaintiffs have responded, defendants have replied, and a hearing on the motions was held before the undersigned on June 25, 2026, at Raleigh, North Carolina. In this posture, the motions are ripe for disposition. For the following reasons, the motions are granted.

## <u>BACKGROUND</u>

This case stems from police investigations and subsequent arrests following billing disputes between a classic car restoration shop and its former customers. Plaintiffs, Vivian Pompliano and AJP Group, LLC, opened Pomp Boys Motors in Roanoke Rapids, North Carolina in 2019. [DE 68] ¶ 1; [DE 70] p. 2. According to Pompliano, the remaining individual defendants, current or former Roanoke Rapids police officers, targeted plaintiffs' business in order to protect the commercial interests of the existing auto-repair industry in Roanoke Rapids. [DE 69-3] pp. 16-17.[1] In her deposition, Pompliano testified that defendant officers "prompted" twenty-one former Pomp Boys customers to file a civil lawsuit against plaintiffs. *Id.* p. 27; *see also* [DE 64-11].

[1] Page citations to documents filed on the Court's electronic docket are to the page numbers generated by CM/ECF.

Pompliano received reports from some customers that the defendant officers would stop customers on-site at Pomp Boys and tell the customers not to do business with Pompliano and to speak with the police. [DE 69-3] p. 32

In support of these claims, Pompliano submitted affidavits signed by former customers.[2] [DE 71-2]; [DE 71-3]; [DE 71-4]. One of these customers, Mr. Charles Hobbs, asserts that the Roanoke Rapids Police Department ("RRPD") "pressured" him to file charges against Pompliano. [DE 71-2] ¶ 5. Mr. Hobbs stated that he was "told to file a consumer complaint with the Attorney General's office, and told to hire private attorneys Franklin Jones and Jim White to sue Pomp Boys Motors." *Id.* Another customer, Mr. Roger Anderson, stated that he was stopped by a "guy" at Pomp Boys, told he was a "victim" and being treated unfairly by Pomp Boys, and told to go to the police. [DE 71-3] ¶ 2. At the police department, Mr. Anderson was told that he "needed to file a complaint with the [North Carolina] Department of Justice, and needed to call a local lawyer named Franklin Jones." *Id.* ¶ 3.

Mr. Darin Sellers, another Pomp Boys customer, stated that he was approached in May 2022 by Roanoke Rapids police while conducting business at Pomp Boys. [DE 71-4] ¶ 2. He was asked to go to the police station where "the Roanoke Rapids Police pressured [him] to file a complaint." *Id.* ¶¶ 2-3. After telling the police that he had no complaints, they referred him to attorney Frank Jones. *Id.* ¶ 3. Mr. Sellers then received a voicemail from David Fox with the North Carolina Department of Justice, who told Mr. Sellers that he had received his contact information from the RRPD and they had told him that Mr. Sellers was having problems with Pomp Boys. *Id.* ¶ 5]. Each affidavit states that the customer was either "happy" or "satisfied" with the work performed by Pomp Boys. [DE 71-2] ¶ 6; [DE 71-3] ¶ 5; [DE 71-4] ¶ 8.

---

[2] Some defendants have objected to the filing of these affidavits. [DE 73] at 5 n.1.

But not all former customers were satisfied with Pomp Boys' services. On May 24, 2022, defendant Hardy, a captain with the RRPD during the relevant time period, spoke with Ms. Vickie Evans, then seventy-five years old, about her business dealings with plaintiffs. [DE 63] ¶¶ 1,3. During that conversation, defendant Hardy learned that Ms. Evans's husband had taken his car to Pomp Boys to have work done on it. [DE 63] ¶ 3. Mr. Evans subsequently passed away. *Id.* When Ms. Evans went to retrieve her late husband's car, Pompliano told Ms. Evans that the storage fees for the car totaled around $9,000, representing that the car had been in storage from May 2021 to March 2022. *Id.* Ms. Evans received an invoice from Pomp Boys seeking $10,601.71. *Id.*; [DE 71-1] p. 5.

Of the $10,601.71 total, $10,255 were storage fees, representing $35 per day, for 293 days. [DE 71-1] at 5. The invoice indicated that the car was stored from May 1, 2021, to March 25, 2022, but Ms. Evans told the RRPD that she had photographs showing the car was not being stored at Pomp Boys for the entire duration indicated on the invoice. [DE 68] ¶ 2. In her deposition, Pompliano asserts that Hardy "instructed [Ms. Evans] to file criminal charges and join the lawsuit." [DE 69-3] at 30. Hardy investigated the complaint and believed there was probable cause to seek a warrant against Pompliano for felony attempting to obtain property by false pretenses and felony exploitation of a disabled/elderly person's trust. [DE 63] ¶ 4. On May 26, 2022, a magistrate issued an arrest warrant for Pompliano for (1) attempted obtaining property by false pretenses in violation of N.C. Gen. Stat. § 14-100, and; (2) exploitation of an older or disabled adult in violation of N.C. Gen. Stat. § 14-112.2(B). *Id.* ¶ 5; [DE 64-3]. Hardy arrested Pompliano that same day. [DE 64-2] at 6; [DE 63] ¶ 7.

On May 27, 2022, Dennis Harvey filed a complaint with the RRPD, after speaking with his attorney, regarding storage fees levied against his vehicle by Pomp Boys. [DE 63] ¶ 11. Mr.

Harvey asserted that he took his car to Pomp Boys in April 2021. *Id.* In August 2021, the work was complete; Mr. Harvey paid $200 toward his total and told Pompliano he would pay the remainder next month. *Id.* He returned in October to pick up the car and was told by Pompliano that he owed $5,000 in storage fees. *Id.* On October 27, 2021, Mr. Harvey was told that his storage fees were then $8,000. *Id.* Mr. Harvey stated that there was standing water inside his vehicle that was causing damage. *Id.* Mr. Harvey said that he has multiple sclerosis ("MS"), and that he was on a fixed income that would not permit such a large expenditure. *Id.* Hardy spoke with Mr. Harvey and investigated the complaint, believing there was probable cause to obtain an arrest warrant for felony exploitation of a disabled/elderly person's trust. *Id.*

On May 31, 2022, Rose Beacham, who was eighty at the time, filed a complaint with RRPD regarding her late husband's car. [DE 63] ¶ 8. Ms. Beacham's husband had taken his car to Pomp Boys but died while the car was still there. *Id.* Ms. Beacham alleged that Pomp Boys sent her two invoices, one for $17,101.23 and one for $31,329.40. *Id.* Pompliano informed Ms. Beacham that she could have the vehicle if she paid the $17,101.23 but that she needed to sign paperwork which prevented Ms. Beacham from holding Pomp Boys liable and stated that she was satisfied with the work. *Id.* Ms. Beacham paid the $17,101.23 invoice, [DE 68] ¶ 4, but upon receiving the vehicle, Ms. Beacham discovered that the work was either not completed or done poorly. *Id.*; [DE 63] ¶ 8. Following his investigation, Hardy believed there was probable cause to obtain a warrant for felony exploitation of a disabled/elderly person's trust. [DE 63] ¶ 9. Three additional customers filed complaints with the RRPD regarding invoice disputes with Pomp Boys. *See* [DE 68] ¶¶ 5-7.

On June 7, 2022, a magistrate issued a second arrest warrant for Pompliano for exploitation of an older or disabled adult in violation of N.C. Gen. Stat. Ann. § 14-112.2(B) for her business

dealings with Mr. Harvey and Ms. Beacham, respectively. [DE 64-7]; [DE 64-5]. On June 27, 2022, Pompliano was arrested. [DE 64-8].

On September 12, 2022, a grand jury indicted Pompliano on one count of attempted obtaining property by false pretenses and one count of exploitation of an older adult in connection with her business dealing with Vicki Evans, [DE 64-9] p. 1, one count of exploitation of an elderly/ disabled adult in connection with her business dealings with Rose Beacham, [DE 64-9] p. 2, and one count of exploitation of an elderly/disabled adult in connection with her business dealings with Dennis Harvey, [DE 64-9] p. 3. Defendant Shelburne presented the charges to the grand jury. [DE 71-12] pp. 15-16. According to Shelburne, the officer testifying before the grand jury simply reads the summary of the facts provided by the investigating officer that is in the district attorney's report. *Id.* p. 16. The officer presenting the information to the grand jury does not do a separate investigation. *Id.* p. 17. The prosecutor ultimately dismissed the criminal charges against Pompliano for insufficient legal evidence on March 8, 2024. [DE 71-9] pp. 1-3.

On January 4, 2023, twenty-one plaintiffs, including Ms. Evans and Mr. Harvey, filed a complaint against plaintiffs in Wake County Superior Court, alleging claims under the North Carolina Motor Vehicle Repair Act and for unfair and deceptive trade practices, unjust enrichment, negligence, and conversion. [DE 63] ¶ 19; [DE 64-11]. Plaintiffs initiated this action on July 26, 2024, by filing a complaint against the City of Roanoke Rapids ("City"); three of its police officers ("officers"): Antonio Seward, Jayme Shelburne, and Jamie Lee Hardy; and former customers Vickie Evans, Dennis Harvey, Rose Beacham,[3] and L&R Motor Company. [DE 1]. Plaintiffs then filed an amended complaint against the defendants on November 18, 2024. [DE 32]. In the amended complaint, plaintiffs seek relief on ten claims. *Id.* ¶¶ 81-163. On January 6, 2025,

[3] The complaints identify Ms. Beacham as Rose Beachman. [DE 1]; [DE 32].

Plaintiffs filed a notice of dismissal of all claims against defendants Dennis Harvey and Vickie Evans. [DE 40]. On October 4, 2025, the undersigned granted plaintiffs' motion to dismiss with prejudice their claims against defendants Rose Beacham and L&R Motor Company. [DE 55]. Defendants City, Seward, and Shelburne filed an answer to the amended complaint on November 26, 2024, [DE 35], and a motion for summary judgement on March 3, 2026, [DE 66]. Defendant Hardy, who is no longer employed by the RRPD, filed an answer to the amended complaint on November 27, 2024, [DE 36], and a motion for summary judgment on March 2, 2026, [DE 62].

In plaintiffs' memorandum in opposition to summary judgement, [DE 70] p. 19 n. 3, and during the hearing on the instant motions, plaintiffs, through counsel, did not take a position regarding seven of their ten claims for relief. Plaintiffs agree that only the following three claims against the remaining defendants are at issue:

(1) Violation of the North Carolina Constitution's "fruits of their labor" clause;

(2) State law malicious prosecution, and;

(3) Malicious prosecution under 42 U.S.C. § 1983 against defendants Hardy, Seward, [4] and Shelburne.

Taking each remaining claim in turn, plaintiffs allege that defendants violated Pompliano's rights under Article I, § 1, of the North Carolina Constitution, specifically the "fruits of their labor" clause. [DE 32] ¶ 115. The amended complaint alleges that defendants sought the forced closure of Pomp Boys through a harassment campaign. *Id.* ¶¶ 117-18. Plaintiffs next allege a state-law malicious prosecution claim, though this claim is alleged only against now-dismissed defendants Dennis Harvey and Vickie Evans. *Id.* ¶ 141. Lastly, plaintiffs allege that the defendant officers

[4] At the hearing, plaintiffs also appeared to clarify that they do not pursue their § 1983 claim against defendant Seward. However, for efficiency, the Court considers the arguments of all of the officer defendants together when considering this claim.

violated Pompliano's Fourth Amendment rights by arresting and prosecuting Pompliano without probable cause. *Id.* ¶¶ 83-84. This prosecution took place while Pompliano was engaged in various civil disputes with the alleged victims. *Id.* ¶ 85.

DISCUSSION

A motion for summary judgment may not be granted unless there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *U.S. Dept. of Labor v. N.C. Growers, Ass'n*, 377 F.3d 345, 350 (4th Cir. 2004). The movant bears the initial burden of showing an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant meets that initial burden, the non-moving party must demonstrate that there are specific material facts in dispute to survive the motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992).

In determining whether a genuine issue of material fact exists, the court views the evidence, and any reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, the nonmoving party must proffer more than "a scintilla of evidence in support of" their position to survive a motion the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A dispute of material fact is genuine "if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

**(1) Violation of Art. I § 1 of the North Carolina Constitution against all defendants.**

Turning first to plaintiffs' claim under the North Carolina Constitution, the State Constitution recognizes in all persons an inalienable right to, among other things, "the enjoyment

of the fruits of their own labor[.]" N.C. Const. art. I, § 1 ("fruits of their labor clause"). The fruits of their labor clause is construed to protect the "fundamental right to earn a living" *Dunckel v. City of Winston-Salem*, 929 S.E.2d 631, 638 (N.C. Ct. App. 2026).

The North Carolina Supreme Court "has recognized a direct action under the State Constitution against state officials for violation of rights guaranteed by the Declaration of Rights." *Corum v. Univ. of N. Carolina Through Bd. of Governors*, 330 N.C. 761, 783 (1992). "However, a direct cause of action under the State Constitution is permitted only 'in the absence of an adequate state remedy.'" *Davis v. Town of S. Pines*, 116 N.C. App. 663, 675 (1994) (quoting *Corum*, 330 N.C. at 782). The state remedy is adequate regardless of the ultimate success of the claim. *Wilcox v. City of Asheville*, 222 N.C. App. 285, 299-300 (2012). Finally, a direct claim under the North Carolina Constitution may be brought "only against state officials acting in their official capacities." *Love-Lane v. Martin*, 355 F.3d 766, 789 (4th Cir. 2004).

Plaintiffs' tortious interference with contract claim provides them with an adequate remedy for their claim that the defendants' actions deprived Pompliano of the fruits of her labor, as both claims are based on the same acts and seek the same remedy. *Compare* [DE 32] ¶¶ 117-119 *with* ¶¶ 105-110. Additionally, plaintiffs' fruits of their labor claim against the officer defendants in their individual capacities must be dismissed.

Moreover, plaintiffs' claim under the fruits of their labor clause fails.

> [T]o survive constitutional scrutiny under this provision, the challenged state action "must be reasonably necessary to promote the accomplishment of a public good, or to prevent the infliction of a public harm." . . . This test involves a "twofold" inquiry: "(1) is there a proper governmental purpose for the statute, and (2) are the means chosen to effect that purpose reasonable?"

*Kinsley v. Ace Speedway Racing, Ltd.*, 386 N.C. 418, 424 (2024) (quoting *Poor Richard's, Inc. v. Stone*, 322 N.C. 61, 64 (1988)); *see also Dunckel*, 929 S.E.2d at 638. "The core principle behind

the fruits of their labor clause is that government 'may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations.'" *Kinsley v. Ace Speedway Racing, Ltd.*, 284 N.C. App. 665, 675–76 (2022) (citations omitted).

Plaintiffs allege that Pompliano and her business were unfairly targeted by law enforcement. Plaintiffs have failed, as is discussed more fully below, to create a genuine issue of material fact as to whether Pompliano's arrests and indictments were secured without probable cause. Because her arrests and indictments were supported by probable cause, plaintiffs have not created a genuine issue of fact as to whether any defendants' actions were arbitrary or were unreasonable applications of the criminal laws in support of the public good. Defendants are entitled to summary judgment on plaintiffs' state constitution claim.

**(2) North Carolina state law malicious prosecution against defendants Vickie Evans and Dennis Harvey.**

Plaintiffs next assert a state law claim for malicious prosecution. In the amended complaint, this claim is alleged only against defendants Evans and Harvey. Since these two defendants have been voluntarily dismissed by plaintiffs, [DE 40], this claim is no longer viable. Additionally, plaintiffs cannot amend their complaint through their arguments in opposition to summary judgment in order to assert this claim against any remaining defendants. *See Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008).

**(3) Malicious prosecution under 42 U.S.C. § 1983 against defendants Hardy, Seward, and Shelburne.**

"In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'" *Wright v. Collins*,

766 F.2d 841, 850 (4th Cir. 1985) (quoting *Vinnedge v.* Gibbs, 550 F.2d 926, 928 (4th Cir. 1977)). A malicious prosecution action requires the plaintiff to "show that (1) the defendant seized [her] pursuant to legal process but without probable cause and (2) the criminal proceedings terminated in the plaintiff's favor." *Thurston v. Frye*, 99 F.4th 665, 673 (4th Cir. 2024). Since the prosecutions against Pompliano were ultimately dismissed by the prosecutor, only the first prong is in dispute. "[T]o determine whether an arrest was backed by probable cause, [courts] ask whether the facts known to the officer could make a prudent officer believe that the suspect's conduct satisfies the elements of a criminal violation." *Id.* at 674.

Defendants have raised the defense of qualified immunity as to the § 1983 malicious prosecution claim. Qualified immunity shields government officials from liability for statutory or constitutional violations so long as they can reasonably believe that their conduct does not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court employs a two-step procedure for determining whether qualified immunity applies "that asks first whether a constitutional violation occurred and second whether the right violated was clearly established." *Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (courts "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

At the summary judgment stage, when considering whether qualified immunity applies, "court[s] draw[] inferences in the light most favorable to the plaintiff." *Melgar*, 593 F.3d at 353. This generally means "adopting . . . the plaintiff's version of the facts." *Scott,* 550 U.S. at 378. Courts "do not make credibility determinations in resolving the first prong of the [qualified

immunity] analysis." *Wilson v. Prince George's Cnty., Maryland,* 893 F.3d 213, 220 (4th Cir. 2018). With respect to the second prong, "[a] right can be clearly established by cases of controlling authority in this jurisdiction or by a consensus of persuasive authority from other jurisdictions." *Sharpe v. Winterville Police Dep't*, 59 F.4th 674, 683 (4th Cir. 2023). Moreover, the right must be defined with specificity, "[a]nd the particulars matter." *Id.*

As to the first prong of the qualified immunity analysis, whether a constitutional violation occurred, defendants argue that probable cause existed for Pompliano's arrest first because the arrest warrants were issued by a magistrate. Generally, when officers execute an arrest warrant, "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner[.]" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). There is an exception to this general rule for circumstances where "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Id.* at 547 (quoting *Malley*, 475 U.S. at 341). This exception would apply where, "for example, . . . the warrant was 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)).

Additionally, the defendant officers argue that the grand jury indictments established the reasonableness of their conduct for purposes of qualified immunity. "It has long since been settled by the Supreme Court that an indictment, fair upon its face, returned by a properly constituted grand jury, conclusively determines the existence of probable cause." *Durham v. Horner*, 690 F.3d 183, 189 (4th Cir. 2012) (internal quotation marks omitted). However, "a grand jury's decision to indict will not shield a police officer who deliberately supplied misleading information that influenced the decision." *Massey v. Ojaniit*, 759 F.3d 343, 356–57 (4th Cir. 2014) (internal

quotation marks omitted). To fall under this exception, the officer's false statements or omissions must be both "material, that is, necessary to the finding of probable cause," and "made deliberately or with a reckless disregard for the truth." *Id.* at 357 (internal quotation marks omitted).

The Court agrees with defendants that the issuance of the arrest warrants and the grand jury indictments are sufficient to establish that there was probable cause for Pompliano's arrests, as plaintiffs have failed to create a genuine issue of material fact as to whether a reasonable officer would not have found that a warrant should issue or that any of the officers deliberately mislead the magistrate or the grand jury. In support of their arguments in opposition to summary judgment, plaintiffs contend that there was no probable cause to support issuance of the arrest warrants and they point to what they contend are material differences between the arrest warrants and the grand jury indictments, which, they argue, is evidence that the grand jury was misled or was given false information. *See* [DE 70] pp. 10-11. But the record evidence does not support plaintiffs' arguments.

Under North Carolina law, a person commits the crime of attempting to obtain property by false pretenses when they knowingly attempt to obtain goods, services, money, or other things of value by using any false pretense. N.C. Gen. Stat. § 14-100. A person commits the crime of exploitation of an older/disabled adult when they "knowingly, by deception or intimidation, obtain or use, or endeavor to obtain or use, an older adult's or disabled adult's funds, assets, or property with the intent to temporarily or permanently deprive the older adult or disabled adult of the use, benefit, or possession of the funds, assets, or property, or to benefit someone other than the older adult or disabled adult." N.C. Gen. Stat. § 14-112.2(b).

First, though plaintiffs contend that the charge of attempted obtaining property by false pretenses could not be supported because Mr. Evans's car was not acquired unlawfully, Ms.

Evans's money is also suitable property for purposes of the statute. Second, the indictments filed as part of the record show that Pompliano was indicted for the same charges for which her arrest warrants were issued. The arrest warrants for conduct concerning Ms. Evans and Ms. Beacham use the phrase "older adult," while the arrest warrant for conduct concerning Mr. Harvey uses the phrase "disabled adult." [DE 64-3]; [DE 64-5]; [DE 64-7]. The indictments each recite charges for exploitation of an "elder adult" in the caption. *See* [DE 64-9]. The charging language references "disabled adult" for conduct concerning Ms. Beacham, though there is no allegation that she is disabled. *Id.* p. 2. There is no evidence that Mr. Harvey is an elder adult, though the charging language does refer to Mr. Harvey as a "disabled adult." *Id.* p. 3. The statute under which Pompliano was charged concerns conduct targeting *both* older and disabled adults. *See* N.C. Gen. Stat. § 114-112.2(b). That there are some inconsistencies between "elder" and "disabled" used in the indictments does not create a genuine issue of material fact as to whether the defendant officers lied to or materially mislead the grand jury; rather, the inconsistencies could have been simply the result of typographical errors.

Moreover, at the summary judgment stage, "the question is not whether there is a genuine dispute of material fact about whether probable cause existed, but rather whether there is a genuine dispute of material fact about what the officers knew or reasonably believed at the time that could support a finding of probable cause." *Harris v. Town of S. Pines*, 110 F.4th 633, 639 (4th Cir. 2024). "For probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002).

Here, defendants have proffered evidence which supports that Hardy investigated complaints from customers of the plaintiffs, in particular Ms. Evans, Ms. Beacham, and Mr.

Harvey, that he believed Pompliano's conduct violated the criminal code, and that he presented his evidence to a magistrate, who reviewed the evidence and issued arrest warrants. Plaintiffs contest Mr. Harvey's alleged disability, but Hardy's investigation notes reflect that Mr. Harvey specifically complained that he felt he was being taken advantage of because he is disabled due to MS. [DE 64-6] p. 3. Ms. Beacham and Ms. Evans were both seventy-five years old or older, making them older adults under the statute. *See* N.C. Gen. Stat. § 114-112.2(a)(2). Plaintiffs have, at bottom, proffered no evidence which would tend to show that no reasonable officer would have believed that an arrest warrant should have issued under these particular circumstances. The evidence further supports that Shelburne presented Hardy's evidence to the grand jury and the grand jury returned indictments. None of plaintiff's evidence creates a genuine dispute as to whether Shelburne lied to or deliberately misled the grand jury. While plaintiffs have proffered evidence of satisfied customers and evidence which they contend would show that the RRPD was unfairly targeting Pompliano and her business, none of that evidence calls into question what Hardy and Shelburne state that they reasonably believed based on the complaints of other customers.

Accordingly, the Court determines that there is no basis on which to disregard the magistrate's and grand jury's probable cause determinations. Plaintiffs have not created a genuine issue of material fact as to whether a constitutional violation occurred. The defendant officers are therefore entitled to qualified immunity on plaintiffs' § 1983 malicious prosecution claim.

In sum, plaintiffs have abandoned all but three of their claims for relief. Plaintiffs' North Carolina Constitution fruits of their labor clause claim fails because plaintiffs have an adequate remedy at state law and because they cannot establish the elements of their claim. Plaintiffs' state law malicious prosecution claim is dismissed because it is alleged only against two defendants

who have been voluntarily dismissed from this action. Finally, the defendant officers are entitled to qualified immunity on plaintiffs' § 1983 malicious prosecution claim.

CONCLUSION

Accordingly, for the foregoing reasons, defendants' motions for summary judgment [DE 62]; [DE 66] are GRANTED. The clerk is DIRECTED to enter judgment in favor of defendants and against plaintiffs and to close this case.

SO ORDERED, this 29 day of October 2026.

Terrence Boyle

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE